[No. 22735-9-III.   Division Three.   April 19, 2005.]

BRANDT SAPPENFIELD, *Appellant*, v. THE DEPARTMENT OF CORRECTIONS, *Respondent*.

■■■■■■■

■■■■■■■

*Stephen K. Eugster* (of *Eugster Law Office, P.S.C.*), for appellant.

*Annette E. Cook* (of *Law Office of Annette Cook*), for respondent.

---

■■■■■■

■■■

■■■■■■

¶1 SWEENEY, A.C.J. — The Department of Corrections (Corrections) reserves the right to withhold agency records from inmates, except for the inmate's own file and health records. Corrections has a published procedure for providing additional records to inmates. Records requested by inmates are copied and mailed to the inmate, subject to a copying charge of 20 cents per page plus postage, payable in advance. Brandt Sappenfield challenges this procedure. And he sued when Corrections offered to mail the records he asked for but refused to arrange for him to inspect them in person at no charge. The court dismissed Mr. Sappenfield's motion to compel disclosure on his terms. We conclude that Corrections's procedures appropriately balance public disclosure act mandates with its duty to manage prison inmates. And we affirm the trial court's ruling.

## FACTS

¶2 Brandt Sappenfield moved in the superior court to order Corrections to show cause why it refused his request for an in-person inspection of some Corrections records, pursuant to the public disclosure act (PDA) (chapter 42.17 RCW). Mr. Sappenfield was an inmate at the Airway Heights Correctional Center. He made several written requests to inspect certain Corrections records (not his own file). He first asked to inspect the "Supply Inventory Track-

ing Request (SITR) forms for Unit C-4." Clerk's Papers at 4. Building Unit C-4 housed Mr. Sappenfield. And, according to him, the documents were also located there.

¶3 The public disclosure coordinator at Airway Heights compiled the requested documents and informed Mr. Sappenfield of Corrections Policy No. 280.510. Policy No. 280.510 gives inmates a right of access on demand only to documents in their own file. And it establishes a procedure for other documents. Documents approved for disclosure are copied and mailed to the inmate subject to a 20 cents per page copying charge. The documents are mailed when payment is received.

¶4 The public disclosure coordinator compiled 187 pages of documents requested by Mr. Sappenfield and told him that these would be mailed upon receipt of $46.62.

¶5 Mr. Sappenfield treated this response as a denial of his PDA request. And he filed an administrative appeal challenging the validity of the Corrections policy. He alleged the policy was contrary to RCW 42.17.270 through .290[1] and was invalid on its face and as applied to his request. He asserted that the policy exceeded Corrections's statutory authority to adopt reasonable PDA compliance procedures. He argued that it was not reasonable either to deny an inmate's request to inspect records in person or to demand payment for copies to be mailed. Especially where, as he contended was the case here, the records were located in the same building or complex where the inmate was housed.

¶6 Corrections's central PDA administrator denied the appeal because the requested records were not part of Mr. Sappenfield's file and were therefore subject to its policy. She noted that RCW 42.17.290 requires that agencies adopt disclosure practices that protect public records from disorganization and damage and prevent excessive interference with agency functions.

---

[1] "Public records shall be available for inspection and copying, and agencies shall, upon request for identifiable public records, make them promptly available

¶7 Later Mr. Sappenfield asked to inspect two additional sets of records. Corrections again responded that there would be a 20 cents per page charge plus postage. The charges would total $208.48 and $16.93 respectively. Mr. Sappenfield again replied that he wished only to inspect the documents, not to receive copies, and that he was unwilling to pay any fees. He asked to inspect the records himself. He did not suggest that a noninmate representative be allowed to inspect them for him.

¶8 Mr. Sappenfield also wrote to the state attorney general and asked for a review of Corrections's denial of his request for personal inspection of the records. He again did not mention the idea of a representative. An assistant attorney general explained that Corrections's response was not a refusal to disclose the records.

¶9 Mr. Sappenfield then sued for an order for Corrections to show cause why the records should not be made available for personal inspection. He asserted that Corrections violated the PDA when it failed to permit his inspection of the records and failed to state a proper statutory exception. He argued that Corrections's PDA procedures unlawfully distinguished among persons. He asked the court to compel Corrections to arrange for in-person inspection, to issue a declaratory judgment that Policy No. 280.510 was invalid on its face, and to permanently enjoin Corrections from enforcing that policy. He asked for the PDA penalty plus costs and attorney fees, or for the statutory $125 attorney fee.

¶10 Mr. Sappenfield testified by affidavit that the records he requested were stored in the same unit in which he was housed and, therefore, would not need to be transported. Mr. Sappenfield's affidavit also asserts that the records would not be at risk of damage or disorganization

to any person." RCW 42.17.270. Agency records "shall be available for inspection and copying during the customary office hours." RCW 42.17.280. If the agency does not have customary office hours, then the statute imposes hours of availability. RCW 42.17.280. Agencies may adopt reasonable rules and regulations consonant with the full disclosure purpose of the PDA. "Such rules and regulations shall provide for the fullest assistance to inquirers and the most timely possible action on requests for information." RCW 42.17.290.

and that Corrections would not be burdened by acceding to his request. Corrections showed that the documents were stored elsewhere.

¶11 The court held a hearing by phone. The court found that Corrections complied with the PDA by making copies available by mail at a reasonable charge.

## DISCUSSION

¶12 Mr. Sappenfield urges that sound governance of a free society demands full access by the sovereign people to information about the workings of government agencies that serve them. And while that is certainly true, his requests here also implicate appropriate concerns for the sound governance of a state prison system.

¶13 Central to Mr. Sappenfield's argument is the notion that "disclosure" in the PDA means only in-person inspection of original documents. He regards anything other than strict compliance with the precise terms of a request, even an offer to copy and mail, as a denial. This comes from language in the PDA requiring agencies to make public records available for inspection, to provide "the fullest assistance" to inquirers, and not to distinguish between them. RCW 42.17.260(1), .290. He argues that an agency may respond to a request for in-person inspection by copying and mailing the records only if a specific disclosure exemption applies. Corrections procedures distinguish between PDA requests by inmates and requests by the public at large. Mr. Sappenfield also challenges that distinction.

¶14 Corrections responds that the PDA requirement that public records be available for on-site inspection by members of the public presumes that the members of the public are able to present themselves at the site of the records. And nothing in the statute requires the agency to bring the records to any requester. Offering to copy and mail the records at a reasonable charge is, then, a statutorily adequate response. RCW 42.17.270, .300.

¶15 Corrections argues that the PDA requires procedures for the dissemination of public records to be such as

not to compromise essential agency functions. And Corrections records are stored all over the state. Even if requested records are on-site, inmates would have to be transported out of secure areas or records would have to be transported to them. Individual supervision would have to be provided during personal inspection to fulfill Corrections's statutory obligation to protect its records.

¶16 The question here is whether the PDA requires personal inspection by inmates of original Department of Corrections's documents. We review a challenge to an agency action under the PDA de novo. RCW 42.17.340(3); *Hangartner v. City of Seattle*, 151 Wn.2d 439, 447, 90 P.3d 26 (2004).

¶17 Denial of a PDA request must be accompanied by a written statement of the specific reason disclosure is denied. RCW 42.17.320. And the general rule is that agencies may not "distinguish among persons" who request records. RCW 42.17.270. An agency may not ordinarily deny direct inspection and insist on mailing copies—public records must be available for "inspection" during customary hours of operation or statutorily imposed hours. RCW 42.17.290. Mr. Sappenfield is correct that the choice whether to copy or inspect on site is usually up to the requester, not the agency. In *Spokane Research & Defense Fund v. City of Spokane*, for example, the trial court compensated a requesting party who was permitted to inspect but not to copy. *Spokane Research & Defense Fund v. City of Spokane*, 121 Wn. App. 584, 592, 89 P.3d 319 (2004), *review granted*, 153 Wn.2d 1002 (2005).

¶18 The circumstances here, however, are not the usual case. Matters affecting a prison's internal security are generally the province of prison administrators, not the courts. *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). Prison inmates do not enjoy all the privileges of the public community—they are imprisoned. *Mithrandir v. Dep't of Corr.*, 164 Mich. App. 143, 147-48, 416 N.W.2d 352 (1987). In *Mithrandir*, the corrections department denied a request by prison inmates to inspect

certain records in person but gave the inmates the option either to appoint a representative to inspect the files or to receive copies upon payment of the appropriate fee. *Id.* at 145. This was reasonable. *Id.* at 149. Mr. Sappenfield cites *Mithrandir* for his position that Corrections improperly denied his request to send an agent to inspect the records. The record does not support his claim, however. Mr. Sappenfield never asked permission for a representative to inspect the records. He now contends for the first time that Corrections should have offered, sua sponte, personal access to a noninmate representative. But no rule, statute, or case requires such an offer. The PDA does, however, command that each agency set its own disclosure rules. RCW 42.17.290. And disclosure by promptly mailing copies at a reasonable charge satisfies this statutory obligation.

¶19 The PDA commands agencies to adopt and enforce reasonable rules and regulations not only to maximize public access but also to protect the records in their care from potential damage or disorganization, as well as to prevent excessive interference with essential functions of the agency. RCW 42.17.290. Corrections is, then, statutorily required to adopt procedures that protect the integrity of its records and also avoid interference with Corrections's essential function to securely restrain criminal offenders.

¶20 The PDA provides: "Nothing in this section shall relieve agencies . . . from honoring requests received by mail *for copies* of identifiable public records." RCW 42-.17.290 (emphasis added). It does not categorically preclude denying requests *for direct inspection* when necessary to preserve the records and its own essential functions.

¶21 Decisions from other jurisdictions are generally not helpful because they interpret different statutes. The case of *Owens v. Horn*, for example, cited by Corrections, is distinguishable. *Owens v. Horn*, 684 A.2d 208 (Pa. Commw. Ct.1996). Unlike Washington's PDA, the Pennsylvania public disclosure statute does not require agencies to mail copies to any member of the public who cannot travel to the location of the records. *Id.* at 210.

¶22 The trial court here correctly concluded that Corrections's policy is reasonable. Prison inmates have access without charge to their own personal records. Access to additional public records can be obtained by means of copies mailed upon payment of a reasonable fee.

¶23 We affirm the order of dismissal.

KURTZ and BROWN, JJ., concur.

Reconsideration denied May 26, 2005.

Review denied at 156 Wn.2d 1013 (2006).