146 P.3d 1220 (2006)
Michael B. LIVINGSTON, Appellant,
v.
Ruben CEDENO and Thomas D. McIntyre, Defendants,
Department of Corrections, Respondent.
No. 32253-6-II.
Court of Appeals of Washington, Division 2.
November 14, 2006.
*1221 Duane Michael Swinton, Attorney at Law, Tracy N. Leroy, Witherspoon, Kelley, Davenport & Toole, Spokane, WA, for Appellant.
Peter William Berney, Attorney Generals Ofc/CJ Division, Olympia, WA, for Respondent.

PUBLISHED OPINION
PENOYAR, J.
¶ 1 Michael B. Livingston, a former inmate, appeals the trial court's denial of his motion to show cause under the Public Disclosure Act (PDA)[1], for the Department of Corrections' (DOC) alleged nondisclosure of public records. Livingston argues that the DOC violated the PDA and that the trial court erred by not requiring the DOC to show cause for violating the PDA. Livingston requested that a DOC employee's records be released to him. The DOC's public disclosure coordinator mailed the records to Livingston, but the DOC superintendent withheld them from Livingston under the DOC mail room policy. We hold that the DOC did not violate the PDA and affirm.

FACTS
¶ 2 Michael B. Livingston (Livingston) was an inmate at Olympic Corrections Center (OCC) and later at Cedar Creek Corrections Center (CCCC). While at OCC, Livingston submitted a request to the public disclosure coordinator, seeking disclosure of the training records of a corrections officer, Marleen Amundson. The public disclosure coordinator mailed a copy of the records to Livingston and the records arrived at CCCC. Like all other incoming mail, the records were inspected during CCCC's mail screening process. After inspecting them, CCCC withheld the records from Livingston under DOC Policy 450.100 that authorizes the DOC to inspect and read all incoming mail to prevent offenders from receiving material that threatens the security and order of the facility.[2] Livingston received a mail rejection form, explaining that the DOC superintendent did not permit DOC employee records to be released to inmates. Since Amundson was a DOC employee, the superintendent explained that Livingston could not have access to her employment records.
¶ 3 Livingston appealed to the CCCC superintendent/field administrator. The superintendent denied his appeal, stating that he would not "allow an employee training record into the institution to be given to an inmate." Clerk's Papers (CP) at 5. Livingston again appealed. This time, he appealed to the DOC regional administrator who also denied Livingston's appeal, explaining that "after (documents) leave the PDC's office and arrive in an institution's mail room, mail policy comes into effect . . . [and the] superintendent . . . has the authority to restrict any item from entering [CCCC]." CP at 6.
¶ 4 Livingston filed an action in superior court seeking an order to require the DOC to show cause for its refusal to allow him access to public records. The superior court denied the motion to show cause and Livingston appealed.

ANALYSIS
THE PUBLIC DISCLOSURE ACT
¶ 5 Livingston asserts that the DOC violated the PDA because, although the records *1222 were mailed to him, the DOC did not ensure that the records were delivered to him and the DOC did not actually disclose the records. Livingston requests costs, attorney fees, and a fee for each day he was denied access to the records as permitted by former RCW 42.17.340(4).[3]
¶ 6 The DOC counters that it did not violate the PDA because the public disclosure process was completed when the coordinator sent the records. The DOC asserts that, for PDA purposes, it is irrelevant that the documents were withheld at CCCC's mail room.
¶ 7 The issue here centers on whether the DOC violated the PDA by withholding public records from an inmate under its mail room policy and should therefore be required to show cause for withholding public documents. We review a challenge to an agency action under the PDA de novo. Former RCW 42.17.340(3); Hangartner v. City of Seattle, 151 Wash.2d 439, 447, 90 P.3d 26 (2004).
¶ 8 Under the PDA, agencies are required to make public records available for public inspection and copying. Former RCW 42.17.260(1).[4] The statute only requires that agencies "make available" public records  it does not require agencies to guarantee disclosure or guarantee that mailed documents will be physically received by the person making the request. Former RCW 42.17.260(1). If an agency refuses to disclose public documents, a trial court may order that the agency show cause for its refusal. Former RCW 42.17.340(1).[5]
¶ 9 There could be numerous situations in which records mailed under a PDA request are lost or destroyed in the mail. There also could be many situations where records are delivered to a requester's residence but not actually received by the requester. In these situations, there can be no PDA violation because the records are mailed and the PDA compliance discharged. The PDA cannot impose on agencies the burden to ensure physical delivery of all records to all persons. We hold that the trial court did not err in denying Livingston's motion to show cause because the DOC did not violate the PDA and was therefore not required to show cause under former RCW 42.17.340(1). It did not withhold documents or deny Livingston's request for documents. The public disclosure coordinator mailed the requested documents, complied with the PDA, and, in this instance, the DOC was not subject to the show cause provision of former RCW 42.17.340.
¶ 10 The DOC's obligations under the PDA were discharged when the coordinator mailed the records to Livingston. The CCCC's mail room policy, blocking Livingston's access to the records, is not relevant to a request to show cause for nondisclosure under the PDA. We decline to hold that if an agency does not ensure that records are physically delivered to an incarcerated individual, then an agency violates the PDA.
*1223 ¶ 11 Livingston includes in the record documentation that another inmate received employee records and relies on the DOC's disclosure to this inmate to argue that the DOC arbitrarily denied his request. DOC Policy 450.100 gives the DOC discretion to withhold records; it does not require that all records be withheld. Therefore, it is not relevant that another inmate received records because the DOC has discretion to decide if it will withhold records. Because we hold that the DOC did not violate the PDA, we decline to award attorney fees or statutory penalties to Livingston.
¶ 12 Affirmed.
I concur: HOUGHTON, C.J.
ARMSTRONG, J. (Dissent).
¶ 13 Because I disagree that the Department of Corrections can use its mail room policy to circumvent the intent and plain language of the Public Disclosure Act (PDA), I dissent.
¶ 14 We construe the PDA[6] liberally, in favor of disclosure, and construe exemptions to the Act narrowly. Former RCW 42.17.251 (2002); see Hangartner v. City of Seattle, 151 Wash.2d 439, 450, 90 P.3d 26 (2004) (citing Dawson v. Daly, 120 Wash.2d 782, 790, 845 P.2d 995 (1993) (the PDA generally requires agencies to disclose requested documents unless a "specific statutory exemption" applies)). Former RCW 42.17.340(1) states that the agency bears the burden of showing that a "refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records." See also Daly, 120 Wash.2d at 789, 845 P.2d 995 (citing Brouillet v. Cowles Pub'g Co., 114 Wash.2d 788, 793, 791 P.2d 526 (1990)).
¶ 15 The PDA has numerous exemptions, including one that protects some portions of an employee's personnel records and another that protects law enforcement investigative records. Former RCW 42.17.300(1)(d), (u). But the Department did not invoke one of these exemptions and the PDA does not exempt records that may violate a mail room policy regardless of its rationale  here, threatened security and order.[7] Moreover, even if an agency can articulate a plausible reason for not disclosing records, it still must produce the records absent a PDA authorized exemption. See, e.g., King County v. Sheehan, 114 Wash.App. 325, 57 P.3d 307 (2002). In short, if the PDA does not authorize an exemption, the exemption does not exist. Finally, the PDA does not allow an agency to "distinguish among persons requesting records." Former RCW 42.17.270 (2002).
¶ 16 Perhaps to avoid these clear rules, the Department crafts an argument that it fully complied with the PDA when it mailed the requested documents to itself on Livingston's behalf. And, continues the Department, the PDA does not require an agency to guarantee that the requestor actually receives mailed PDA records. Thus, reasons the Department, it is not subject to the expedited legal procedures set forth in the PDA and no judge can decide whether its reasons for not producing the records are valid under the PDA. Unfortunately, the majority accepts the Department's reasoning.
¶ 17 I would too if the U.S. Postal Service had lost the records. But it did not; the Department seized the records. The Department, not the Postal Service, has prevented Livingston from getting the requested records and it should answer for its failure to deliver. Because the Department claimed no PDA exemption, I would remand for the trial court to order the Department to produce the records and to impose the appropriate PDA sanctions against the Department for its willful failure to do so.
NOTES
[1] Former RCW 42.17.250-.348 (2002)
[2] While the record does not disclose the rational behind the DOC's mail room policy, the wisdom of not allowing inmates to obtain personal information about DOC employees is evident. If inmates could obtain employees personal information, they could use the information as leverage against DOC employees.
[3] Former RCW 42.17.340(4) provides:

Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he [or she] was denied the right to inspect or copy said public record.
[4] Former RCW 42.17.260(1) provides:

Each agency, in accordance with published rules, shall make available for public inspection and copying all public records, unless the record falls within the specific exemption of subsection (6) of this section, RCW 42.17.310, 42.17.315, or other statute which exempts or prohibits disclosure of specific information or records.
(Emphasis added).
[5] Former RCW 42.17.340(1) provides:

Upon the motion of any person having been denied an opportunity to inspect or copy a public record by an agency, the superior court in the county in which a record is maintained may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records. The burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records.
(Emphasis added).
[6] Former RCW 42.17.250-.348 (2002).
[7] It is not easy to find a connection between a correction officer's training records and a security threat.