[No. 79608-4.   En Banc.]
Argued November 29, 2007.    Decided July 3, 2008.

MICHAEL B. LIVINGSTON, *Petitioner*, v. RUBEN CEDENO ET AL., *Defendants*, THE DEPARTMENT OF CORRECTIONS, *Respondent*.

*Duane M. Swinton*; and *Tracey N. Leroy* (of *Baker Botts, LLP*), for petitioner.

*Robert M. McKenna, Attorney General, Carol A. Murphy, Deputy Solicitor General*, and *Peter W. Berney* and *Daniel J. Judge, Assistants*, for respondent.

*Scott A.W. Johnson, Shelley M. Hall, Aviva Kamm*, and *Sarah A. Dunne* on behalf of American Civil Liberties Union of Washington, amicus curiae.

*Scott A.W. Johnson, Shelley M. Hall*, and *Aviva Kamm* on behalf of Washington Coalition for Open Government, amicus curiae.

¶1 MADSEN, J. — Michael Livingston challenges a split Court of Appeals decision affirming the denial of his motion for a show cause hearing brought under the public disclosure act, chapter 42.17 RCW (now the Public Records Act).[1]

---

[1] Effective July 1, 2006, the public disclosure provisions of chapter 42.17 RCW were reorganized into their own chapter, chapter 42.56 RCW, and named the

In response to Livingston's public records request, the Department of Corrections (Department) copied and mailed departmental records to him at the correctional institution where he was then incarcerated. Upon arrival, the documents were intercepted as "contraband" under the mail policy applicable to all incoming and outgoing materials. Livingston contends the Department's action in barring his receipt of the documents violated the Public Records Act. We hold the Department's application of the mail policy to its own public records did not violate the Public Records Act, and we affirm the Court of Appeals.

## FACTS

¶2 Michael Livingston filed a public disclosure request while incarcerated at the Olympic Corrections Center. Clerk's Papers (CP) at 56. He sought the training records of a corrections officer. *Id.* The Department confirmed receipt of the request and told Livingston it would give the officer a chance to file a privacy injunction.[2] CP at 58. The officer did not object, so the Department's public disclosure officer copied and mailed the record to Livingston, who had been transferred to the Cedar Creek Corrections Center in the meantime. CP at 14, 60. When the records arrived at Cedar Creek, they were screened. Cedar Creek officials then withheld the records from Livingston under department Policy Directive No. DOC 450.100, which authorizes the Department to inspect and read all incoming mail to prevent offenders from receiving material that threatens the security and order of the facility. Livingston received a mail rejection form, explaining the superintendent did not permit department employee records to be released to inmates. CP at 63. The mail rejection form informed Livingston that unless he forwarded the rejected mail to a

---

Public Records Act. LAWS OF 2005, ch. 274, § 102. Both parties cite to the new chapter, which in relevant part is identical to the prior act.

[2] The statute provides that any personal information appearing in such a document, such as a Social Security number, can be redacted. Former RCW 42.17.260(1) (1997); RCW 42.56.070(1).

nonincarcerated person, the Department would either donate or destroy it.

¶3 Livingston filed an appeal. The Cedar Creek superintendent denied the appeal, stating he would not "allow an employees['] training record into the institution to be given to an inmate." CP at 66 (capitalization omitted). The Department's regional administrator denied Livingston's subsequent appeal, stating that when public disclosure documents "arrive in an institution's mailroom, mail policy comes into effect [and the] superintendent . . . has the authority to restrict any item from entering [the facility]." CP at 6 (first alteration in original).

¶4 Livingston appealed this decision through the Department, which upheld it. CP at 65. He then filed a motion in Thurston County Superior Court, asking the Department to show cause for withholding the record. CP at 2. The trial court denied the motion. CP at 105. Livingston appealed, and a majority of the Court of Appeals affirmed, holding, "The statute . . . does not require agencies to guarantee disclosure or guarantee that mailed documents will be physically received by the person making the request." *Livingston v. Cedeno*, 135 Wn. App. 976, 980, 146 P.3d 1220 (2006).

## ANALYSIS

¶5 The issue presented in this case is whether the Department violates the Public Records Act when it copies and mails public records requested by an inmate, yet withholds the same records upon arrival under the mail policy applicable at a correctional institution.

¶6 It is well settled that a reviewing court interprets the disclosure provisions of the Public Records Act liberally and the exemptions from disclosure narrowly. *Hangartner v. City of Seattle*, 151 Wn.2d 439, 450, 90 P.3d 26 (2004); *see also* former RCW 42.17.251 (1992); RCW 42.56.030. In general, an agency must disclose a public record unless a statutory exemption applies. *Hangartner*, 151 Wn.2d at

450; former RCW 42.17.260(1) (1997); RCW 42.56.070(1). Here, neither the Department nor the affected correctional officer invoked any statutory exemptions before the Department released and mailed the records to Livingston. Indeed, the Department contends it fulfilled its obligation under the statute when it approved the request and sent the record in the mail.

¶7 The Department argues its decision to intercept the requested public record is unrelated to the Public Records Act. According to the Department, its authority to preclude Livingston's receipt of the record arises under RCW 72.09.530,[3] which authorizes the secretary of the Department to read all incoming mail and to confiscate contraband arriving in the prison mail system. RCW 72.09.530 is the basis for Policy Directive No. DOC 450.100, which is designed to "prevent offenders from receiving . . . contraband, or any other material that threatens to undermine the security and order of the facility, through the mail; and to prevent criminal activity." CP at 127. The Department points out that former RCW 42.17.260(1), which requires public agencies to make records available for inspection and copying, does not guarantee documents will be physically received by the person making the request.

¶8 Livingston claims it is not enough that the Department mailed the requested records. He argues the Department may not mail public records to an inmate and then withhold those same records absent a statutory exemption. He contends the Department's mail room policy is not an

---

[3] RCW 72.09.530 provides,

The secretary shall, in consultation with the attorney general, adopt by rule a uniform policy that prohibits receipt or possession of anything that is determined to be contraband. The rule shall provide consistent maximum protection of legitimate penological interests, including prison security and order and deterrence of criminal activity. The rule shall protect the legitimate interests of the public and inmates in the exchange of ideas. The secretary shall establish a method of reviewing all incoming and outgoing material, consistent with constitutional constraints, for the purpose of confiscating anything determined to be contraband. The secretary shall consult regularly with the committee created under RCW 72.09.570 on the development of the policy and implementation of the rule.

exemption that can be used to deny an inmate access to public records. To support his claims, Livingston cites to this court's decision in *Brouillet v. Cowles Publishing Co.*, 114 Wn.2d 788, 791 P.2d 526 (1990), where we held that a regulation guaranteeing the confidentiality of certain records cannot serve as an exemption. He also points to WAC 44-14-06002(1), which provides, "An agency cannot define the scope of a statutory exemption through rule making or policy."

¶9 We agree with Livingston that RCW 72.09.530, which authorizes the Department's mail policy, is not an exemption to disclosure under the Public Records Act. However, we disagree that the Department's use of its mail policy—to confiscate materials that the Department determines "threatens to undermine the security and order of the facility"—violates the act. CP at 127. The Public Records Act requires the department to release its records to the public. However, whether the Department must allow them inside a correctional facility is a distinct issue, subject to different statutory obligations. Under RCW 72.09.530, the Department has broad discretion to deny entry of any materials it determines may threaten legitimate penological interests, without exception for public records.

¶10 Whenever possible, statutes must be read in harmony and each must be given effect. *Tunstall v. Bergeson*, 141 Wn.2d 201, 210, 5 P.3d 691 (2000); *Publishers Forest Prods. Co. v. State*, 81 Wn.2d 814, 816, 505 P.2d 453 (1973). The Public Records Act and RCW 72.09.530 are aimed at two different concerns. The primary purpose of the Public Records Act is to provide broad access to public records to ensure government accountability. To that end, each agency "shall make available for public inspection and copying" all nonexempt public records. RCW 42.56.070(1). Agencies must honor requests received by mail and may not "distinguish among persons requesting records." Former RCW 42.17.270 (1987); RCW 42.56.080.

¶11 The primary objective of the correctional system, on the other hand, is "to provide the maximum feasible safety"

for the public, staff, and inmates. RCW 72.09.010(1).[4] Accordingly, RCW 72.09.530 directs the Department to screen all incoming and outgoing materials and intercept any "contraband" in order to protect legitimate security concerns within the state penal institutions. "Contraband" is defined as "any object or communication" banned by the Department from any institution under its control. RCW 72.09.015(4).

¶12 In its capacity as an agency subject to the Public Records Act, the Department must respond to all public disclosure requests without regard to the status or motivation of the requester. The statutory directive to screen incoming and outgoing mail does not relieve the Department of its obligation to disclose public records requested by an inmate. However, it does authorize the Department to decide whether those records will be permitted inside the institution. Acting in its custodial capacity to ensure the safety of inmates, staff, and the public, the Department may prohibit the entry into an institution of materials otherwise subject to disclosure under the Public Records Act.

¶13 As the United States Supreme Court and this court have recognized, "many rights and privileges are subject to limitation in penal institutions because of paramount institutional goals and policies." *State v. Hartzog*, 96 Wn.2d 383, 391, 635 P.2d 694 (1981); *see also Hudson v. Palmer*, 468 U.S. 517, 524, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). In particular, considerable deference must be given to prison administrators to regulate communications between prisoners and the outside world. *Thornburgh v. Abbott*, 490 U.S. 401, 408, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989); *see also Sappenfield v. Dep't of Corr.*, 127 Wn. App. 83, 110 P.3d

---

[4] RCW 72.09.010 states,

It is the intent of the legislature to establish a comprehensive system of corrections for convicted law violators within the state of Washington to accomplish the following objectives.

(1) The system should ensure the public safety. The system should be designed and managed to provide the maximum feasible safety for the persons and property of the general public, the staff, and the inmates.

808 (2005) (recognizing the unique circumstances of incarceration in the context of public disclosure requests), *review denied*, 156 Wn.2d 1013 (2006).

¶14 Livingston argues the Department's use of its mail policy to restrict access to public records violates the Public Records Act's requirement that it not "distinguish among persons requesting records." RCW 42.56.080. On the contrary, the Department treats public disclosure requests equally, whether received by ordinary citizens or inmates. The Department's application of the mail policy to public records upon their arrival at a correctional institution does not amount to impermissible disparate treatment under the Public Records Act. The inmate's status and motivation is not a factor in the Department's decision *to release* a document. But whether a document is allowed inside an institution under the Department's control is a discrete issue, subject to a different statute that requires the Department to take into account "legitimate penological interests, including prison security and order." RCW 72.09.530. Whereas the Department is limited in its discretion to decide whether to make its records publicly available, it has broad discretion to decide whether such records may be allowed inside a correctional institution. The Public Records Act does not limit the Department's discretion in prohibiting entry of public records that it reasonably deems inappropriate in a prison setting.[5]

---

[5] In the dissent's view, our holding is "impossible to reconcile" with *Prison Legal News, Inc. v. Department of Corrections*, 154 Wn.2d 628, 115 P.3d 316 (2005). Dissent at 60. On the contrary, the records in that case were not confiscated as "contraband." Indeed, *Prison Legal News* involved a distinct issue. In that case, the Department claimed the names of disciplined staff members were exempt from disclosure under former RCW 42.17.310(1)(d) (2003) as "specific investigative records" whose release would thwart "effective law enforcement." This court declined the Department's "invitation to define every activity it undertakes as 'law enforcement' " and concluded the exemption was inapplicable. *Prison Legal News*, 154 Wn.2d at 640. We observed, "Were we to accept [the Department's] definition, investigations of all aspects of [the Department's] operations would be off limits from public disclosure." *Id.* Unlike in *Prison Legal News*, the issue in this case is not whether the agency may refuse to make records publicly available. The Department is not claiming an exemption from public disclosure. The issue is whether the Department's unwillingness to allow certain public records inside correctional facilities violates its duty to make such records publicly available. It

¶15 In his dissent, Judge Armstrong questioned the legitimacy of the Department's action, finding it improbable an officer's training records could undermine prison security. *Livingston*, 135 Wn. App. at 982 (Armstrong, J., dissenting). Livingston has not challenged the reasonableness of the Department's mail policy or the characterization of the record as "contraband"; he only challenges the Department's authority to apply the policy to public records. Nevertheless, we note the Department could have reasonably determined the records could prove detrimental to prison security by, for example, revealing training vulnerabilities of correctional officers.

¶16 We reject Livingston's contention the Department cannot withhold any materials from an inmate absent a specific exemption that applies to that material. Such a rule would create an exception to RCW 72.09.530 for Public Records Act materials that is not contained in the statute. Additionally, construing the statute to include such an exception would create the anomalous situation that an inmate could possess materials the Department would otherwise ban from the institution so long as the material is obtained through a public disclosure request. For example, an inmate convicted of child molestation who is ordered not to possess photos of children could gain access to such materials if requested through a public disclosure request, even though the Department could otherwise restrict the inmate's access to such photos. Nothing in the legislative intent language of RCW 72.09.010 or the language of RCW 72.09.530 supports such a construction.

¶17 RCW 72.09.530 directs the Department to regulate incoming and outgoing mail to the maximum extent permissible under the constitution in order to provide the "maximum protection" of prison security and order. Carving out a broad exception for all public records is contrary to this express statutory directive and would provide an

is Livingston's condition of incarceration that limits his access to the documents at issue, not the Department's unwillingness to make them available for public inspection.

inmate with far *greater* rights than required by the First Amendment to the United States Constitution. As a condition of confinement, an inmate's First Amendment right to send and receive mail lawfully may be restricted by prison regulations reasonably related to legitimate penological interests. *Thornburgh*, 490 U.S. at 407; *Turner v. Safley*, 482 U.S. 78, 95, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). In the absence of clear legislative intent or a constitutional requirement, we are disinclined to impose additional restrictions on the Department's right to regulate an inmate's receipt of mail.

¶18 Livingston also contends the Court of Appeals' decision in this case conflicts with *Sappenfield*, 127 Wn. App. 83. The issue in *Sappenfield* was whether the Department could, consistent with the Public Records Act, require an inmate to pay for and obtain by mail copies of department records, or send a personal representative to inspect the records, rather than inspect the original documents in person. *Id.* at 88-89. The Court of Appeals, Division Three, held such a policy was reasonable and did not violate the act given the necessary restraints placed on prisoners. *Id.* at 89.

¶19 The decision by Division Two of the Court of Appeals in this case does not conflict with *Sappenfield*, which is factually distinguishable.

¶20 It is worth noting, however, that in affirming the Department's procedure, the *Sappenfield* court discussed, with approval, *Mithrandir v. Department of Corrections*, 164 Mich. App. 143, 147-48, 416 N.W.2d 352 (1987). In that case, the Michigan Court of Appeals approved a prison procedure denying an inmate a right to personally inspect records but allowing either appointment of a representative to inspect the files or the opportunity to receive copies upon payment of the appropriate fee. Similar to *Sappenfield* and *Mithrandir*, the Department's mail policy here provided an alternative procedure for receiving the requested records in light of internal safety concerns in the prison setting. As mentioned earlier, the notice of mail rejection gave

Livingston the opportunity to forward the rejected mail to a location outside the institution. The Department's policy of offering to have rejected mail sent to another location indicates it is not using the mail policy for the illegitimate purpose of thwarting public disclosure, but for the legitimate purpose of ensuring the security of its institutions.

¶21 We agree the Department may not deny a public records request based on the requester's status as an inmate. However, the director's decision to bar Livingston's possession of the materials here was not based on Livingston's status and does not constitute a denial of his public records request. Rather, the decision was an exercise of the Department's discretionary authority to apply a mail policy designed to protect the institution, the inmates, department personnel, and visitors to the institution.

## CONCLUSION

¶22 We find no conflict between RCW 72.09.530 and the Public Records Act, chapter 42.56 RCW. Each statute serves a different legislative purpose. While the Public Records Act is intended to provide broad access to public records to ensure government accountability, RCW 72.09.530 is intended to protect legitimate security concerns within the state penal institutions. Here, the Department complied with the Public Records Act when it mailed the requested documents to the address provided by Livingston. The Department's subsequent decision to bar Livingston from receiving the documents pursuant to its mail policy did not violate Livingston's rights under the Public Records Act. We affirm the Court of Appeals.

ALEXANDER, C.J.; C. JOHNSON and FAIRHURST, JJ.; and BRIDGE, J. PRO TEM., concur.

¶23 J.M. JOHNSON, J. (dissenting) — "Each agency . . . shall make available . . . all public records, unless the record

falls within [an exemption in this chapter] or other statute which exempts or prohibits disclosure . . . ." RCW 42.56.070(1). The effect of the statute is that the public and each member of the public own the public records, even though a record may be in the custody of an agency. This law is clear. If (1) an agency holds a record, (2) the record is public, and (3) the record is not exempt, the agency "shall make [the record] available" to any member of the public requesting it. *Id.* Here, the Department of Corrections (Department) admits (1) it is an agency, (2) the record is public, and (3) the record is not exempt. Its only duty, then, is to make the record available to Michael Livingston, who properly requested it.

¶24 The majority agrees with all of this. It then holds that the Department *did* make the record available when it mailed the record to itself, complying with the law even though the record was then withheld from Livingston. The majority starts by holding, "The Public Records Act requires the department to release its records to the public." Majority at 52. This is the wrong starting point under the statute. First, the records are not "its," they are records of the public. The Department's duty is not to release; its duty is to make available. The distinction is crucial. If the law said "release," the majority would be more persuasive since "release" could mean place in the mail. But the law requires agencies to make records available, and I cannot agree that an agency makes a record available by mailing the record to itself and then withholding the record from the person who requested it.

¶25 The act itself precludes narrow construction such as the majority's definition of "make available." The act provides, "This chapter shall be liberally construed and its exemptions narrowly construed to promote this public policy." RCW 42.56.030. Liberal construction of "make available" certainly does not include "withhold."

¶26 The crux of the majority's holding is the separate law empowering corrections officials to withhold contraband from prisoners. RCW 72.09.530. The majority holds

that the Public Records Act (ch. 42.56 RCW) does not conflict with this law. I cannot agree. The Public Records Act requires the Department to make the record available to Livingston. RCW 42.56.070(1). The contraband law allows it to withhold the record from Livingston. RCW 72.09.530.[6] There is an apparent conflict as applied by the Department here.

¶27 Certainly a court must read statutes in harmony when possible. *Tunstall v. Bergeson*, 141 Wn.2d 201, 210, 5 P.3d 691 (2000). But we cannot disregard a broad law (especially an initiative of the people) like the Public Records Act to make it subservient to a narrow law. The people adopting the Public Records Act knew the provisions could conflict with other laws and specified the resolution: "In the event of conflict between the provisions of this act and any other act, the provisions of this act shall govern." RCW 42.17.920. Since making records available and withholding them are mutually incompatible, the laws conflict, and the Public Records Act controls.

¶28 On this point, the majority holds, "[T]he Department has broad discretion to deny entry of any materials it determines may threaten legitimate penological interests, without exception for public records." Majority at 52. This gets the law backward and disregards the above express command in RCW 42.17.920. The Public Records Act is a broad law requiring the State to prove exceptions, not the other way around. If the Department wanted to argue that the prisoner contraband law (RCW 72.09.530) is an exemption to the Public Records Act, it could make that argument.[7] But the Department freely admits the contraband

---

[6] Actually, it tells the secretary of the Department only to write rules about contraband, but I assume arguendo the broadest reading for the Department—that it allows corrections officials' full discretion to decide what is contraband and to withhold it from a prisoner.

[7] It would lose, though. The Public Records Act contains an exemption for "other statute[s] which exempt[ ] or prohibit[ ] disclosure of specific information or records." RCW 42.56.070(1). "The rule applies only to those exemptions explicitly identified in other statutes . . . ." *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 262, 884 P.2d 592 (1994). The contraband statute does not

law is not an exemption; it must make the record available to Livingston. RCW 42.56.070(1).

¶29 The majority pays lip service to the fact that agencies must treat a prisoner like any other person requesting a public record.[8] RCW 42.56.080. But it then holds, "the Department may prohibit the entry into an institution of materials otherwise subject to disclosure under the Public Records Act." Majority at 53. That is to say, an agency may treat prisoners differently from other requesters, as prohibited by RCW 42.56.080.

¶30 This conclusion also conflicts with our decision only three years ago in *Prison Legal News, Inc. v. Department of Corrections*, 154 Wn.2d 628, 115 P.3d 316 (2005), where we held the Department had to give a prisoner the records of prison medical staff.[9] In that decision, we applied the usual rules of the Public Records Act, assuming the prisoner could have the records unless the Department proved an exemption. *Id.* at 635. We put the Department through the rigors of the act, the same as we would have done had the plaintiff not been a prisoner. That holding is impossible to reconcile with the majority today, holding, "the Department . . . has broad discretion to decide whether [public] records may be allowed inside a correctional institution. The Public Records Act does not limit the Department's discretion in prohibiting entry of public records that it reasonably deems inappropriate in a prison setting." Majority at 54. Today's holding clearly conflicts with *Prison Legal News*.

¶31 The majority holds that an agency may withhold public records that fall into no exemption from disclosure.

---

even mention information or records, let alone exempt them from public disclosure. RCW 72.09.530.

[8] Until or unless the act is amended. *See* Curt Woodward, *Attorney General McKenna Unveils Ambitious Wish List*, SEATTLE TIMES, Jan. 4, 2008, at B1 (detailing a proposal to send to the victims fund Public Records Act judgments won by prisoners).

[9] *See supra* note 8.

Since RCW 42.56.070(1) requires the opposite result, I respectfully dissent.

SANDERS, CHAMBERS, and OWENS, JJ., concur with J.M. JOHNSON, J.