247 P.3d 436 (2011)
Derek E. GRONQUIST and Byron A. Mustard, Appellants,
v.
DEPARTMENT OF CORRECTIONS, Respondent.
No. 39651-3-II.
Court of Appeals of Washington, Division 2.
January 19, 2011.
As Corrected March 4, 2011.
*438 Derek E. Gronquist, Walla Walla, WA, pro se.
Byron A. Mustard, Wenatchee, WA, pro se.
Andrea Vingo, Attorney General-Corrections Div., Olympia, WA, for Respondent.
BRIDGEWATER, J.
¶ 1 Derek E. Gronquist and Byron A. Mustard (collectively inmates) appeal from a trial court's orders granting the Department of Correction's (DOC) motion for summary judgment and dismissing their show cause motion. We hold that the DOC's Policy 280.510 (policy) does not violate the Public Records Act (PRA),[1] separation of powers, or collateral estoppel. In addition, because the inmates preemptively took the position that they would not pay for any copies of documents, the DOC did not need to perform a search for responsive records. We affirm the orders granting partial summary judgment and dismissing the inmates' show cause motion.

FACTS
¶ 2 On October 27, 2001, Derek Gronquist mailed a Public Disclosure Act (PDA)[2] request to the Airway Heights Corrections Center (AHCC) public disclosure officer asking for all documents alleging retaliatory action by AHCC staff since the facility's inception. Gronquist insisted on inspecting the records in person and did not want to pay for copies. Under DOC Policy 280.510, the DOC does not permit an offender to inspect public records in person except for information contained in the offender's central file or medical file. "Inspection" appears to mean an in-person viewing of public records without cost to the requester. See Clerk's Papers (CP) at 283 (explaining procedures for in-person inspection). For all other records, the DOC mails an inmate copies for a fee of $0.20 per page, plus postage. WAC 137-08-110(2).
¶ 3 The DOC notified Gronquist that, due to the facility's document retention policy, it could not provide complete documentation of every retaliatory act alleged at the AHCC. The DOC later notified Gronquist that it had *439 identified 70 pages of documents and requested $16.95 for copies and postage.
¶ 4 On January 18, 2005, Gronquist filed another PDA request and sought inspection of 14 different categories of information, including written materials regarding himself, materials concerning a job that Gronquist appears to have wanted, the complete employment files of two corrections officers, and records and/or training materials that appraise staff.[3] On January 26, the DOC again notified Gronquist of its policy and that he needed to submit DOC form 05-066 to inspect his central file without cost. The DOC did not provide a page count of responsive documents it found.
¶ 5 On February 16, Byron Mustard filed a PDA request, asking to inspect information regarding his banking records and personnel in charge of managing his account and court-obligated deductions. Mustard stated that he did not want copies; but rather he wanted to inspect the documents. The DOC notified Mustard of DOC Policy 280.510 and stated that it would search existing records and compile the information he sought. On March 4, 2005, the DOC notified Mustard that it had compiled 93 pages of documentation and that it would forward the documents upon receipt of $22.45.
¶ 6 The inmates have not paid for copies and thus the DOC has not sent the requested documents. On October 5, 2006, the inmates sued the DOC, seeking an injunction enjoining the DOC from enforcing its policy and to declare the policy contrary to statutory and constitutional law. The inmates also sought to compel inspection of the records they requested in 2001 and 2005.[4] They also claimed that the DOC was collaterally estopped from enforcing the policy because of a previous judicial determination in a case brought by Gronquist.
¶ 7 On August 8, 2008, the DOC moved for summary judgment, arguing that, under Sappenfield v. Department of Corrections,[5] its policy was proper. On August 22, the inmates filed a motion to show cause why inspection of the records should not be compelled and the policy should not be enjoined. They alleged that the DOC failed to (1) perform an adequate search for the records requested, (2) identify withheld records, and (3) preserve records subject to PRA requests.
¶ 8 The trial court granted a partial summary judgment motion in the DOC's favor, finding Sappenfield persuasive. In a separate hearing, the trial court denied the inmates' show cause motion and dismissed their complaint with prejudice. The inmates appeal both orders.

ANALYSIS

I. DOC POLICY 280.510

A. Summary Judgment
¶ 9 First, the inmates argue that under the PRA, the DOC must permit them to inspect public records in person and that denying them that right amounts to a denial of their PRA requests. The inmates contend that the DOC may only charge for copies if they request that the copies be mailed to them.
¶ 10 We review de novo a challenge to an agency action under the PRA. Sappenfield v. Dep't of Corr., 127 Wash.App. 83, 88, 110 P.3d 808 (2005), review denied, 156 Wash.2d 1013, 132 P.3d 146 (2006). When reviewing an order granting summary judgment, we engage in the same inquiry as the trial court. Kahn v. Salerno, 90 Wash.App. 110, 117, 951 P.2d 321, review denied, 136 Wash.2d 1016, 966 P.2d 1277 (1998). Summary judgment is appropriate if the pleadings, depositions, answers *440 to interrogatories, and admissions on file, together with the affidavits, if any, show that no genuine issue as to any material fact exists and that the moving party is entitled to a judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends, in whole or in part. Morris v. McNicol, 83 Wash.2d 491, 494, 519 P.2d 7 (1974). We consider all reasonable inferences in the light most favorable to the nonmoving party. Clements v. Travelers Indem. Co., 121 Wash.2d 243, 249, 850 P.2d 1298 (1993). The parties do not dispute any issues of fact as to the summary judgment motion.[6]
¶ 11 Public records shall be available for inspection and copying, and agencies shall, upon request for identifiable public records, make them promptly available to any person. RCW 42.56.080. Agencies shall not distinguish among persons requesting records. RCW 42.56.080. Agency facilities shall be made available to any person for the copying of public records except when and to the extent this would unreasonably disrupt the agency's operations. RCW 42.56.080. Agencies shall adopt and enforce reasonable rules and regulations consonant with the intent of chapter 42.56 RCW to provide full public access to public records, to protect public records from damage or disorganization, and to prevent excessive interference with other essential agency functions. RCW 42.56.100.
¶ 12 An agency shall not charge a fee for inspecting public records or for locating public documents and making them available for copying. RCW 42.56.120. But an agency may impose a reasonable charge for providing copies of public records, so long as the charges do not exceed the amount necessary to reimburse the agency for its actual costs incident to such copying. RCW 42.56.120.
¶ 13 In enforcing DOC Policy 280.510, the DOC appropriately balances the PRA's mandates with its duty to manage prison inmates. Sappenfield, 127 Wash.App. at 84, 110 P.3d 808. Sappenfield, an incarcerated inmate at the AHCC, filed a PDA request to inspect information not contained in his central file. Sappenfield, 127 Wash.App. at 84, 110 P.3d 808. The DOC informed him of DOC Policy 280.510, that it had compiled 187 pages of documents, and that it would mail the documents upon receipt of payment. Sappenfield, 127 Wash.App. at 85, 110 P.3d 808. Sappenfield treated this as a denial and sued for an order for DOC to show cause why the records should not be made available for personal inspection. Sappenfield, 127 Wash. App. at 85-86, 110 P.3d 808.
¶ 14 The trial court upheld the DOC's policy and Division Three of this court affirmed. Sappenfield, 127 Wash.App. at 87, 110 P.3d 808. First, the court acknowledged that the choice whether to copy or inspect on site is usually up to the requester, not the agency. Sappenfield, 127 Wash.App. at 88, 110 P.3d 808. But the court then noted that prisoner requests "are not the usual case." Sappenfield, 127 Wash.App. at 88, 110 P.3d 808. The court acknowledged that prison administrators generally control matters affecting the prison's internal security and that inmates do not enjoy all the privileges of the public community. Sappenfield, 127 Wash. App. at 88, 110 P.3d 808. Further, the court noted that the PDA commands each agency to set its own disclosure rules. Sappenfield, 127 Wash.App. at 89, 110 P.3d 808 (citing former RCW 42.17.290 (1995), recodified as RCW 42.56.100 by Laws of 2005, ch. 274, § 103). The court concluded that "disclosure by promptly mailing copies at a reasonable charge satisfies this statutory obligation." Sappenfield, 127 Wash.App. at 89, 110 P.3d 808.
¶ 15 In addition, the court noted that the DOC's policy complied with its duty to adopt and enforce reasonable rules and regulations to protect the public records and prevent excessive interference with its essential function to securely restrain criminal offenders. Sappenfield, 127 Wash.App. at 89, 110 P.3d 808 (citing former RCW 42.17.290). In addition, while the PRA specifically prohibits agencies from denying a requester copies of identifiable public records, the statute did not *441 preclude denying requests for direct inspection when necessary to preserve the records and the agency's own essential functions. Sappenfield, 127 Wash.App. at 89, 110 P.3d 808 (citing former RCW 42.17.290). Thus, the Sappenfield court concluded that the DOC's policy was reasonable. Sappenfield, 127 Wash.App. at 90, 110 P.3d 808.
¶ 16 The inmates argue that Sappenfield is erroneous and should not be followed. They argue that the PRA permits inspection by any person and does not permit an agency to consider the requester's identity. But our Supreme Court recently favorably cited Sappenfield and acknowledged the unique nature of prisoner requests for PRA disclosures. Livingston v. Cedeno, 164 Wash.2d 46, 53-54, 186 P.3d 1055 (2008).
¶ 17 Livingston, an incarcerated offender, challenged a DOC policy in which his mail, which contained records the DOC produced in response to a PRA request, was intercepted as contraband under the prison's mail policy. Livingston, 164 Wash.2d at 48-49, 186 P.3d 1055. The court held that the DOC's application of the mail policy to its own public records did not violate the PRA. Livingston, 164 Wash.2d at 49, 186 P.3d 1055. The court reasoned that "[a]cting in its custodial capacity to ensure the safety of inmates, staff, and the public, the [DOC] may prohibit the entry into an institution of materials otherwise subject to disclosure under the [PRA]." Livingston, 164 Wash.2d at 53, 186 P.3d 1055. The court acknowledged that, as it and the United States Supreme Court has recognized, prisoners have, in many respects, more limited rights and privileges because of paramount institutional goals and policies. Livingston, 164 Wash.2d at 53, 186 P.3d 1055. Importantly to this case, the court acknowledged that it had to give "considerable deference . . . to prison administrators to regulate communications between prisoners and the outside world." Livingston, 164 Wash.2d at 53-54, 186 P.3d 1055 (favorably citing Sappenfield as recognizing the unique circumstances of incarceration in the context of PRA requests).
¶ 18 We agree with Division Three and adopt the Sappenfield court's holding. The DOC's need to securely restrain incarcerated offenders and to protect public records has not changed in the years since Sappenfield was decided. Gronquist and Mustard were incarcerated offenders at the time of their disclosure requests. Their incarceration presents unique concerns in the context of PRA requests. The DOC is entitled to adopt reasonable rules to protect both the records and its essential agency functions.[7] Furthermore, because the policy is valid, the DOC did not, in applying the policy, deny the inmates' requests or fail to identify withheld documents. In fact, the DOC did not withhold documents; the inmates simply refused to avail themselves of the policy and pay for copies. DOC Policy 280.510 is a reasonable way of addressing these concerns.[8] The DOC was therefore entitled to judgment as a matter of law. We hold that the trial court did not err in granting the DOC partial summary judgment.

B. Separation of Powers
¶ 19 Next, the inmates argue that separation of powers enjoins us from following Sappenfield or affirming the DOC's policy. We disagree.
¶ 20 The separation of powers doctrine recognizes that each branch of government has its own appropriate sphere of activity. Hale v. Wellpinit Sch. Dist. No. 49, 165 Wash.2d 494, 504, 198 P.3d 1021 (2009). To determine whether an action violates separation of powers, we must determine whether the activity of one branch threatens the independence *442 or integrity or invades the prerogatives of another. Hale, 165 Wash.2d at 507, 198 P.3d 1021. It is the judicial branch's function to interpret the law. Hale, 165 Wash.2d at 505, 198 P.3d 1021. It is within our appropriate sphere of activity to determine what a particular statute means and that determination relates back to the time of the statute's enactment. Hale, 165 Wash.2d at 506, 198 P.3d 1021. The legislature's role is to set policy and to draft and enact laws. Hale, 165 Wash.2d at 506, 198 P.3d 1021.
¶ 21 Sappenfield does not violate separation of powers. In Sappenfield, Division Three interpreted the PRA's requirement that each agency set its own disclosure rules. 127 Wash.App. at 89, 110 P.3d 808 (citing former RCW 42.17.290). It did not alter the PRA nor invade the legislature's independence, integrity, or prerogatives.
¶ 22 The inmates cite Fritz v. Gorton, 83 Wash.2d 275, 287, 300, 309-10, 517 P.2d 911 (1974), for the proposition that the judiciary may not alter PRA's statutory scheme under separation of powers doctrine. But, as we already stated, Sappenfield does not alter the statutory scheme or enact new legislation. It interprets an agency's implementation of the PRA's mandate to set disclosure rules that do not interfere with the agency's essential functions or place public records in danger. Sappenfield does not violate the separation of powers doctrine.

C. Collateral Estoppel
¶ 23 In addition, the inmates argue that collateral estoppel prohibits application of Sappenfield because Gronquist previously successfully litigated this issue before the superior court and the DOC did not appeal that order. We disagree.
¶ 24 On October 21, 2001, Gronquist sent the DOC a PDA request seeking inspection of disciplinary minutes, recordings, and findings regarding serious infractions against all AHCC inmates, including himself, in the prior 24 months. He also sought DOC guidelines regarding serious infractions and information regarding the DOC's relationship with and complaints against Omega Pacific, Inc. The DOC requested additional time to process the request, and it informed Gronquist that once the compilation was complete, it would provide copies for $0.20 per page.
¶ 25 Eventually, the DOC informed Gronquist that due to the large number of documents retrieved, the cost of copies would exceed $300. The DOC requested prepayment of $300 before going further with Gronquist's request as well as additional time to assemble the requested records. Gronquist filed a show cause motion to compel inspection of the documents. Gronquist asked the trial court to compel the DOC to make the records available for in-person inspection, not just to provide copies. The trial court found that the DOC had not provided justification for the $300 fee because it had not assembled the records before calculating the fee. The trial court appears to have been concerned with the DOC's demand for a fee based on an estimated cost. The trial court found that while the statutory scheme permits a charge for copies when requested, Gronquist did not request copies. The trial court stated, "I don't know if it's a fact that prisoners are routinely required to pay a fee when they request a public disclosure, but that's not before me right now. I just don't see a justification for the $300 fee." CP at 202.
¶ 26 Collateral estoppel applies when: (1) the issue decided previously is identical with the one presented in the second proceeding; (2) the prior adjudication ended with a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party to the prior adjudication; and (4) application of the doctrine will not work an injustice. Hanson v. City of Snohomish, 121 Wash.2d 552, 562, 852 P.2d 295 (1993). The burden of proof is on the party asserting the doctrine as a bar. Dep't of Ecology v. Yakima Reservation Irrigation Dist., 121 Wash.2d 257, 296, 850 P.2d 1306 (1993).
¶ 27 The inmates have not carried their burden of proving that the 2001 ruling decided an identical issue of fact as that presented in this case.[9] The trial court in 2001 appeared *443 unclear about whether it was ruling on the policy and its ruling did not clearly bar application of the DOC's policy. Instead, the 2001 trial court found that the DOC had not justified its demand that Gronquist pay a $300 advance fee. While the trial court did note that Gronquist did not want copies, it also stated that it was not ruling on the DOC's policy. See Davis v. Nielson, 9 Wash. App. 864, 875, 515 P.2d 995 (1973) (when, because of ambiguity or indefiniteness, the appellate court cannot say that the issue was determined in the prior action, collateral estoppel will not be applied as to that issue). Here, the policy's validity is at issue, not whether the copy fees were justified. Accordingly, the inmates failed to show that this case presents an identical issue to Gronquist's 2001 lawsuit.

II. SHOW CAUSE MOTION  ADEQUACY OF SEARCH AND RECORDS RETENTION
¶ 28 Gronquist[10] next argues that the trial court erred by denying his show cause motion as to his October 27, 2001, and January 18, 2005, requests. We disagree.
¶29 Upon the motion of any person having been denied an opportunity to inspect or copy a public record, the superior court may require the agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records. RCW 42.56.550(1). The burden of proof shall be on the agency to establish that the refusal is in accordance with a statute that exempts or prohibits disclosure. RCW 42.56.550(1). Where the record on a show cause motion consists entirely of written materials and the trial court has not seen nor heard testimony requiring it to assess the credibility or competency of a witness, weigh evidence, nor reconcile conflicting evidence, then an appellate court stands in the same position as the trial court in looking at the facts of the case and should review the record de novo. Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 252, 884 P.2d 592 (1994) (PAWS); Zink v. City of Mesa, 140 Wash.App. 328, 336, 166 P.3d 738 (2007). Under such circumstances, the reviewing court is not bound by the trial court's findings on disputed factual issues. PAWS, 125 Wash.2d at 253, 884 P.2d 592. Here, the trial court did not consider any live testimony (nor make factual findings), so we review both facts and law de novo.
¶ 30 Gronquist argues that even if the DOC's policy is reasonable, the DOC erred by refusing to search for, identify, and safeguard the records he requested.[11] He asserts that the DOC refused to search for records in response to his October 27, 2001, and January 18, 2005, requests. At the trial court, the DOC contended that it had no duty to search for records when it knew that the inmates did not intend to pay for copies. We agree with the DOC.
¶ 31 When inmates make it known to the DOC that they will not pay for copies of records the DOC identifies as responsive to the inmates' PRA requests, searching for, collecting, and identifying the documents would be a futile and useless waste of staff time. We have held that the policy of charging inmates for copies is reasonable, but Gronquist adamantly refuses to pay for the copies. The law does not demand compliance when such compliance results in a vain and useless act. Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd. *444 for King Cnty., 127 Wash.2d 759, 765, 903 P.2d 953 (1995).[12] The uselessness of requiring the DOC to search for and identify more records for Gronquist is illustrated by Gronquist's refusal to pay for copies of the 70 pages the DOC identified in 2001.
¶ 32 Finally, there is no evidence that any of the records that DOC destroyed were the subject of Gronquist's request because Gronquist failed to show that the destroyed documents contained information relevant to his requests. In addition, there is no evidence that the majority of the records Gronquist requested are contained in his central file, nor is there evidence of what a central file might contain. Furthermore, there is no evidence that Gronquist completed DOC form 05-066 requesting access to his central file without charge.
¶ 33 Affirmed.
We concur: QUINN-BRINTNALL, J., and PENOYAR, C.J.
NOTES
[1] Ch. 42.56 RCW.
[2] At the time of Gronquist's request, the PRA was called the Public Disclosure Act and was codified at chapter 42.17 RCW. Former ch. 42.17 RCW (2000). Effective July 1, 2006, the act was renamed and recodified as chapter 42.56 RCW. LAWS OF 2005, ch. 274, §§ 102-03. The relevant portions of the current and former statute appear identical as to the issues involved in this case.
[3] Gronquist also requested a photocopy of a job opening posted in a day room and transferred $0.20 for the single photocopy. The DOC made this document available for mailing upon receipt of $0.57 (copy fee plus actual postage).
[4] Effective July 24, 2005, a PRA requester had to file an action under chapter 42.56 RCW within one year of the agency's claim of exemption or the last production of a record. RCW. 42.56.550(6). But prior to that date, the requester had five years to file an action. Former RCW 42.17.410 (1982). The inmates sent all three disclosure requests before the new statute of limitations became effective and within five years of any alleged exemption or production. As such, we regard their suit as timely.
[5] 127 Wash.App. 83, 110 P.3d 808 (2005), review denied, 156 Wash.2d 1013, 132 P.3d 146 (2006).
[6] The inmates argue that the records they requested are not exempt from disclosure under the PRA. They also contend that the DOC should have identified each record withheld from inspection. But the DOC does not dispute that the records were subject to disclosure.
[7] The inmates argue that the DOC must permit inspection because RCW 42.56.090 requires inspection on an agency's premises during normal business hours. But the policy is necessary to protect the DOC's essential functions. In addition, although an agency has a duty to permit inspection on its premises during normal business hours, there is no requirement that an agency transmit the records to the requester who is unable to come to the agency's premises.
[8] Contrary to the inmates' argument, the DOC does not charge for inspection. The DOC charges for copies and does not permit inmate inspection of documents outside their central or medical files. There is no evidence to suggest that the DOC charges for inspecting one's central or medical files.
[9] The DOC was a party to the prior lawsuit and the parties do not dispute that Gronquist's prior lawsuit ended with a final judgment. Contrary to the DOC's assertion, Mustard did not have to be a party to Gronquist's prior action. Collateral estoppel's third requirement mandates that the DOC or a party in privity to it was a party to the prior action. Hanson, 121 Wash.2d at 562, 852 P.2d 295.
[10] As Mustard has presented no argument on the adequacy of the DOC's search in regards to his request he has waived this issue. RAP 10.3(a)(6); State v. Thomas, 150 Wash.2d 821, 874, 83 P.3d 970 (2004) (without argument or authority to support it, an assignment of error is waived); In re Pers. Restraint of Connick, 144 Wash.2d 442, 455, 28 P.3d 729 (2001) (a pro se appellant held to the same responsibility as a lawyer and is required to follow applicable statutes and rules; failure to do so will preclude review of the asserted claim). Therefore, we assign these arguments to Gronquist and not the joint inmates.
[11] The DOC argues that Gronquist never raised these arguments below and, thus, we should not consider them. This is incorrect. Gronquist raised these arguments in his show cause motion, which the DOC acknowledged below.
[12] Although this is not a mandamus action, Gronquist is essentially asking us to force the DOC to perform a search. As such, the "vain and useless" standard is relevant here.