[No. 73930-7. En Banc.]
Argued October 21, 2003. Decided May 13, 2004.

RICK HANGARTNER, *Respondent*, v. THE CITY OF SEATTLE, *Appellant*.

CITIZENS AGAINST THE MONORAIL, *Respondent*, v. SEATTLE POPULAR MONORAIL AUTHORITY, ET AL., *Appellants*.

*Thomas A. Carr, City Attorney*, and *Roger D. Wynne, Edwin K. Inkley*, and *Shelley J. Pellegrino, Assistants*, for appellants.

*Judith A. Endejan* (of *Graham & Dunn, P.C.*); *Linda B. Clapham* (of *Lane Powell Spears Lubersky, L.L.P.*); *Aaron H. Caplan* (of *American Civil Liberties Union of Washington*); and *Duncan E. Manville* (of *Riddell Williams, P.S.*), for respondents.

*James A. Andersen, Alison P. Howard, Michele L. Earl-Hubbard,* and *Eric B. Martin* on behalf of Allied Daily Newspapers of Washington, Washington Coalition for Open Government, and Washington Newspaper Publishers Association, amici curiae.

*Theodore H. Gathe, Brent D. Boger,* and *Judith M. Zeider* on behalf of Association of Washington Cities and Washington State Association of Municipal Attorneys, amici curiae.

*Christine O. Gregoire, Attorney General,* and *Narda D. Pierce, Solicitor General,* on behalf of the Attorney General's Office, amicus curiae.

*David J. Lenci* and *John L. Groh* on behalf of King County School Coalition, Washington Public Utility Districts Association, and Washington Public Ports Association, amici curiae.

*William J. Crittenden* and *Patrick D. Brown* on behalf of League of Women Voters of Seattle, amicus curiae.

*Pamela B. Loginsky* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

*Leo E. Poort* on behalf of Washington Association of Sheriffs, amicus curiae.

*Mark J. Lee* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

ALEXANDER, C.J. — These consolidated cases raise several issues including: (1) whether a request made under the public disclosure act (PDA) for all of an agency's documents is overbroad, thus excusing the agency from complying with the disclosure request; (2) whether the mere existence of public debate surrounding a transportation project is a "controversy," as defined in RCW 42.17.310(1)(j), rendering

documents related to the project exempt from the PDA; and (3) whether documents covered by the attorney-client privilege are exempt from the PDA. We conclude that documents covered by the attorney-client privilege are exempt from the PDA and, therefore, reverse the trial court in *Hangartner v. City of Seattle* and remand for a determination as to whether the withheld documents are covered by the privilege. We also reverse in *Citizens Against the Monorail v. The Elevated Transportation Company*[1] on the basis that the request for "*all* books, records, [and] documents of every kind" was too broad.

I

*Hangartner v. City of Seattle*

In early 2000, the city of Seattle (the City) announced that it would hold a public hearing on March 21, 2000, regarding Council Bill (CB) 113100. This proposed ordinance was designed to allow the City to issue permits for the "temporary structures and uses" necessary for the construction of a light rail transit system.[2] Hangartner's Clerk's Papers (HCP) at 62. On February 25, 2000, Rick Hangartner sent a PDA[3] request to the City seeking the disclosure of documents relating to CB 113100. Although the City produced the bulk of the requested documents, it withheld three of the requested documents (hereinafter referred to as the light rail documents), asserting that they were exempt from disclosure under RCW 42.17.260(1) by an "other statute," the attorney-client privilege set forth in RCW 5.60.060(2)(a), and the so-called "controversy exemp-

---

[1] The Elevated Transportation Company was a public agency charged with extending the Seattle Monorail. Although it was dissolved by action of the Seattle City Council on June 9, 2003, all of its liabilities were transferred to the Seattle Popular Monorail Authority. To limit confusion, we have referred to the Elevated Transportation Company throughout this opinion, even though the Seattle Popular Monorail Authority has been substituted as the real party in interest.

[2] The record contains (1) clerk's papers for Hangartner (HCP) and (2) clerk's papers for Citizens (CCP).

[3] The PDA is codified at chapter 42.17 RCW.

tion" contained at RCW 42.17.310(1)(j). At the time Hangartner made his request, there was a considerable amount of public debate over the development of the light rail line. The City was not, however, involved in any litigation concerning CB 113100 at that time.

Hangartner brought suit against the City in King County Superior Court seeking an order compelling disclosure of the light rail documents. He then moved for summary judgment. The City responded by filing a cross-motion for summary judgment.

The trial court granted Hangartner's motion and ordered the City to allow Hangartner to inspect and obtain copies of the light rail documents. The trial court did, however, stay its judgment to allow the City an opportunity to seek review of its ruling. The City then sought discretionary review of the trial court's decision with Division One of the Court of Appeals.

In a separate PDA request sent almost two weeks after the trial court's order, Hangartner sought records from the City relating to the City's designation of an alcohol impact area (AIA) in the Pioneer Square neighborhood. Although the City produced many of the requested documents, it withheld three documents (hereinafter referred to as the AIA documents) contending that they were exempt from the PDA under the attorney-client privilege.[4]

The City agreed to allow Hangartner to amend his original complaint to include the City's refusal to release the AIA documents. The trial court then amended the judgment it had previously entered in order to provide that the City was required to release these additional documents.[5] The trial court also stayed the effectiveness of its amended judgment pending resolution of the matter on appeal. The City appealed to Division One of the Court of

---

[4] The City does not contend that the AIA documents are exempt from disclosure under RCW 42.17.310(1)(j), the controversy exemption.

[5] Because Hangartner prevailed in his action, the trial court also awarded Hangartner $43,825 in attorney fees, costs, and statutory penalties pursuant to RCW 42.17.340(4).

Appeals, which struck the prior motion for discretionary review and considered the entire case as an appeal of right.

### Citizens Against the Monorail v. The Elevated Transportation Company

Citizens Against the Monorail (Citizens) sent a PDA request to the Elevated Transportation Company (ETC) in an effort to obtain documents relating to a proposed initiative regarding the development of a new monorail line in Seattle, a matter that was on the November 5, 2002, ballot. In an effort to clarify which documents it was requesting, Citizens modified its request on September 26, 2002, "to ask for the opportunity to inspect *all* books, records, documents of every kind and the physical properties of the Elevated Transportation Company." Citizens' Clerk's Papers (CCP) at 15. Although the ETC informed Citizens that the PDA requires it to produce only " 'identifiable' " public records, it agreed to respond to the request but stated that it would "exercise its responsibility to review for exemptions." CCP at 18. Citizens never narrowed its request.

The ETC attempted to comply with Citizens' request, "on a rolling basis[,]" by screening all documents and releasing the documents it believed were not exempt from disclosure. CCP at 86. Unsatisfied with the ETC's actions, Citizens filed suit against the ETC in King County Superior Court to compel the production of the documents prior to the November 2002 election.

Two days after the suit was filed, the ETC produced a log identifying the records that it believed were exempt from production. The ETC claimed that all of the records at issue in this appeal were either protected by an "other statute," the attorney-client privilege, or the controversy exemption set forth in RCW 42.17.310(1)(j). ETC's Opening Br. at 9-10.

The following day, the trial court held a show cause hearing relating to the withheld records. At that hearing, the ETC contended that: (1) Citizens' request was overbroad, (2) the withheld records were covered by the attor-

ney-client privilege and, therefore, exempt from disclosure under the "other statute" exemption, and (3) some of the records were also exempt by virtue of the controversy exemption. The trial court ordered the ETC to

> disclose to . . . Citizens . . . all of its public records, including all electronic records contained on all computers owned, operated or controlled by the ETC and computers within the control of any ETC Staff member or ETC Board member containing electronic correspondence relating to the conduct of ETC's business; access to private computers shall be through a mutually agreed third party.
>
> . . . .
>
> . . . ETC shall produce all documents identified on its exemption logs.

CCP at 206-07. The court stayed its ruling for 48 hours to allow the ETC to seek emergency appellate review, which it did by filing a petition for discretionary review with Division One of the Court of Appeals.

The following day, Citizens filed an emergency motion with the trial court requesting the immediate production of certain records. In response to this motion, the trial court reviewed two documents in camera and determined that they were exempt from disclosure under RCW 42.17-.310(1)(j), the controversy exemption.

Approximately one week later, the trial court reviewed, in camera, an additional 115 documents relating to the emergency motion. It determined that many of the documents were exempt from production, relying on the PDA's controversy exemption and the attorney-client privilege.[6]

The Court of Appeals granted the ETC's request for discretionary review. Citizens was later granted cross-review of the trial court's determination that certain documents were exempt. The Court of Appeals consolidated both cases that are before us now, and certified them to this court pursuant to RCW 2.06.030(d). Determining that these cases

---

[6] The trial court entered a written order on November 21, 2002, reflecting these decisions.

presented issues of broad public importance, we accepted certification.

## II

■ Agency actions challenged under the PDA are reviewed de novo. RCW 42.17.340(3). We, therefore, stand in the same position as the trial court. *O'Connor v. Dep't of Soc. & Health Servs.*, 143 Wn.2d 895, 904, 25 P.3d 426 (2001).

■ These consolidated cases raise several common issues including: (1) whether the circumstances present when these documents were prepared can be characterized as a "controversy" as defined in RCW 42.17.310(1)(j), and (2) whether the attorney-client privilege provides an exemption from the PDA. Moreover, the ETC contends that Citizens' PDA request was impermissibly broad, rendering it invalid. Because an agency is not required to comply with an invalid PDA request, *Bonamy v. City of Seattle*, 92 Wn. App. 403, 412, 960 P.2d 447 (1998), *review denied*, 137 Wn.2d 1012, 978 P.2d 1099 (1999), we will first reach the question of the validity of Citizens' request.

### A. The Validity of Citizens' Request for All of the ETC's Documents

The ETC contends that it is excused from producing the withheld documents because Citizens' request was overbroad. Citizens responds that it identified the records it sought as "the CDs containing ETC's most important electronic communications." Citizens' Br. of Resp't/Cross Appellant at 42.

■ While there is no official format for a valid PDA request, a party seeking documents must, at a minimum, provide notice that the request is made pursuant to the PDA and identify the documents with reasonable clarity to allow the agency to locate them. *Wood v. Lowe*, 102 Wn. App. 872, 878, 10 P.3d 494 (2000). The PDA requires

agencies to produce only "identifiable public records." RCW 42.17.270. If a request is too vague, an agency can request a clarification. RCW 42.17.320. Here, it cannot be said that the request was vague. Rather, the issue is whether the request was overbroad.

In *Bonamy*, Division One of the Court of Appeals determined that a request " 'for generic policy guidelines on any type of investigation' " was overbroad, rendering the request invalid. *Bonamy*, 92 Wn. App. at 411. The *Bonamy* holding was reaffirmed in *Wood* where Division Three of the Court of Appeals cited *Bonamy* for the proposition that a "request 'for general policy guidelines' [is] too broad." *Wood*, 102 Wn. App. at 879. We agree with the Court of Appeals that a government agency need not comply with an overbroad request. We reach that determination because if a requesting party could meet the PDA's requirement of identifying the desired documents by requesting *all* of an agency's documents, the identification requirement would be essentially meaningless. We will not interpret a statute in a manner that leads to an absurd result. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). The PDA was enacted to allow the public access to government documents once agencies are allowed the opportunity to determine if the requested documents are exempt from disclosure; it was not enacted to facilitate unbridled searches of an agency's property. We hold, therefore, as did the Court of Appeals in *Wood*, that a proper request under the PDA must identify with reasonable clarity those documents that are desired, and a party cannot satisfy this requirement by simply requesting *all* of an agency's documents.

Citizens argues that it "clearly identified the types of records it sought." Citizens' Br. of Resp't/Cross Appellant at 42. Citizens, however, fails to cite to the record to support this claim. Furthermore, Citizens has not suggested that it modified its September 26, 2002, request that sought "*all* books, records, [and] documents of every kind." CCP at 15. The dissent translates this request into one for "all of the public records in ETC's possession *that were pertinent to the*

*purpose for which they were sought.*" Dissent at 455 (emphasis added). Nothing in the record suggests that Citizens so limited its request. Instead, the record supports the ETC's contention that Citizens' request was for all of its records because the trial court ordered the ETC to disclose "all of its public records." CCP at 206. Although the ETC informed Citizens that it was required to produce only " 'identifiable' " records, Citizens never limited its request. CCP at 18. Citizens' request, in sum, could not have been any broader.[7]

When a request is invalid, the agency is excused from complying with it. *Bonamy*, 92 Wn. App. at 412. The ETC was not obligated to comply with Citizens' overbroad request, and the trial court erred in holding otherwise. We, therefore, find it unnecessary to consider the ETC's remaining arguments relating to the trial court's orders.

## B. Hangartner's PDA Requests

### 1. The Controversy Exemption

The City argues that the trial court erred in determining that the controversy exemption does not apply to the light rail documents. The trial court determined that applying the controversy exemption was unnecessary because the City failed to establish that litigation was reasonably likely.

▮ The controversy exemption is contained within the PDA and exempts from disclosure those "[r]ecords which are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts." RCW 42.17.310(1)(j). In *Dawson v. Daly*, 120 Wn.2d 782, 791, 845 P.2d 995 (1993), we defined the phrase "relevant to a controversy" as "completed, existing, or reasonably anticipated litigation." We declined to

---

[7] The dissent contends that Citizens had no choice but to request all of the ETC's documents because the ETC did not maintain a public records index as required by RCW 42.17.260(3). Dissent at 456. Citizens, however, did have the option of challenging the ETC's failure to maintain an index, but it chose not to.

define this phrase as " 'a prolonged public dispute, debate or contention' " concluding that such a definition would violate the PDA's requirement that exemptions are construed narrowly. *Id.* at 790; *see* RCW 42.17.251 ("The public records subdivision of this chapter shall be liberally construed and its exemptions narrowly construed . . . .").

The City contends that the light rail documents were created in reasonable anticipation of litigation because there was a "litigation-charged atmosphere" at the time they were created. City's Opening Br. at 43. The City has, however, failed to establish that there was any threat or reasonable anticipation of litigation concerning the enactment of CB 113100. Indeed, a "litigation-charged atmosphere" is more analogous to the definition of "relevant to a controversy" that we rejected in *Dawson* than it is to the definition we adopted in that case. We hold, therefore, that the trial court did not err in determining that the light rail documents were not exempt under RCW 42.17.310(1)(j).

## 2. The Attorney-Client Privilege as a PDA Exemption

 The PDA generally requires all agencies to disclose requested documents unless a "specific statutory exemption is applicable." *Dawson*, 120 Wn.2d at 789. The purpose of the act is to allow the people to retain their sovereignty and effectively control their government by remaining informed about its actions. RCW 42.17.251. "In order to promote its purposes, the [PDA's] provisions are to be liberally construed to promote full access to public records; its exemptions are to be narrowly interpreted." *Confederated Tribes v. Johnson*, 135 Wn.2d 734, 745-46, 958 P.2d 260 (1998).

 At the trial court, Hangartner contended that the attorney-client privilege provides an exemption for documents only when the documents relate to a "controversy" as defined in RCW 42.17.310(1)(j). The trial court agreed, reasoning that the PDA's "other statute" exemption, contained at RCW 42.17.260(1), does not include the

attorney-client privilege. RCW 42.17.260(1) is a provision of the PDA. It provides, in pertinent part, that "[e]ach agency . . . shall make available for public inspection and copying all public records, unless the record falls within the specific exemptions of subsection (6) of this section, RCW 42.17.310, 42.17.315, or *other statute* which exempts or prohibits disclosure of specific information or records." (Emphasis added.) An agency, therefore, must establish that its record is exempt through one of the specific exemptions listed within the PDA or another statute, incorporated by RCW 42.17.260(1), that exempts or prohibits disclosing the record. As noted above, RCW 42.17.310(1)(j) protects only documents that "are relevant to a controversy . . . [and] would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts."

The City asserts that the attorney-client privilege as codified at RCW 5.60.060(2)(a) is an "other statute" that prohibits disclosing certain records through the PDA. RCW 5.60.060(2)(a) provides that "[a]n attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment."

Hangartner argues that interpreting the attorney-client privilege as an "other statute" as provided in RCW 42.17.260(1) "would render the controversy [exemption] meaningless and superfluous." Hangartner's Br. of Resp't at 19. We agree that "[s]tatutes are construed wherever possible so that no portion is superfluous." *In re Marriage of Gimlett*, 95 Wn.2d 699, 703, 629 P.2d 450 (1981). Nevertheless, a determination that documents that fall within the statutory attorney-client privilege are exempt from the PDA does not render the controversy exemption meaningless. Indeed, in this case, even though Hangartner made requests that he referred to as "voluminous," the City claimed that only six documents, three of the light rail documents and three AIA documents, fell within the attorney-client privilege. HCP at 27; *see* HCP at 417.

The controversy exemption exempts documents that are "relevant to a controversy" and unobtainable through pre-trial discovery, which will include some documents also covered by the attorney-client privilege and some documents that are not covered by the attorney-client privilege. Additionally, the attorney-client privilege protects documents and records that fall within the privilege regardless of whether they are "relevant to a controversy." Thus, an exemption for documents falling within the statutory attorney-client privilege merely complements the controversy exemption.

Recognizing an exemption for documents protected by the attorney-client privilege will not, as the dissent contends, "swallow[ ] the PDA's purpose of allowing citizens a right to public records." Dissent at 459. The attorney-client privilege is a narrow privilege and protects only "communications and advice between attorney and client"; it does not protect documents that are prepared for some other purpose than communicating with an attorney. *Kammerer v. W. Gear Corp.*, 96 Wn.2d 416, 421, 635 P.2d 708 (1981). Thus, should an agency prepare a document for a purpose other than communicating with its attorney, and then claim that the document is protected by the attorney-client privilege, the requesting party might well claim that the agency has acted in bad faith. A finding of bad faith could cost the agency dearly since a requesting party is "entitled" to an award of between $5 and $100 for each day that it was wrongfully denied " 'the right to inspect or copy [the requested] public record.' " *Amren v. City of Kalama*, 131 Wn.2d 25, 35, 37, 929 P.2d 389 (1997) (quoting RCW 42.17.340(4)). When deciding where, between $5 and $100 per day, the appropriate per day award should rest, the court must consider whether the agency claimed an exemption in bad faith. *Id.* at 38.

"When statutory language is plain and unambiguous, the statute's meaning must be derived from the wording of the statute itself." *State v. Johnson*, 104 Wn.2d 179, 181, 703 P.2d 1052 (1985). This rule holds true, even if "the Legisla-

ture intended something else but failed to express it adequately." *State v. Chester*, 133 Wn.2d 15, 21, 940 P.2d 1374 (1997). In our view, RCW 42.17.260(1) is clear in including the statutory attorney-client privilege as an exemption. When the legislature amended the PDA to include the "other statute" exemption, it could have easily trumped the attorney-client privilege by excluding it from consideration as an "other statute." LAWS OF 1987, ch. 403, § 3. It did not do so. Although the dissent would have us rewrite the statute to include a requirement that the "other statute" "mesh[ ] with the PDA," we will not look past the clear language of that statute. Dissent at 458. Instead, we consider both the PDA's mandate that exemptions are interpreted narrowly and the statutory language used in creating the exemptions. Because RCW 5.60.060(2)(a) is unquestionably a statute other than RCW 42.17.260(6), 42.17.310, or 42.17.315 that prohibits the disclosure of certain records, documents that fall under RCW 5.60.060(2)(a) are exempt from the public disclosure act. Consequently, the trial court erred in ordering the City to produce its documents because the trial court never determined whether the documents were protected by the attorney-client privilege.[8]

## III

The language the legislature used in RCW 42.17.260(1) is clear and plainly establishes that documents that fall within the attorney-client privilege are exempt from disclosure under the PDA. The trial court should not, however, have reached that issue in *Citizens* because the PDA request there was invalid because it was overbroad. We reverse the trial court's orders in that case on that basis.

In *Hangartner*, we affirm the trial court's determination that the light rail documents were not exempt under RCW

---

[8] Both Hangartner and Citizens sought attorney fees pursuant to RCW 42.17.340(4), which allows a party to recover attorney fees if he or she prevails in an action for the production of documents under the PDA. However, neither Hangartner nor Citizens prevailed. Therefore, attorney fees are not awarded.

42.17.310(1)(j) because these documents were not created in reasonable anticipation of litigation concerning CB 113100. We do, however, reverse the trial court's determination that the attorney-client privilege does not provide an exemption for the six documents withheld by the City. We, therefore, remand to the trial court to determine if the withheld documents are covered by the attorney-client privilege.

IRELAND, BRIDGE, OWENS, and FAIRHURST, JJ., concur.

JOHNSON, J. (dissenting) — In reaching its decision, the majority disregards the strong statutory mandate requiring disclosure of public documents, misapplies our cases narrowly recognizing statutory exceptions to disclosure, and judicially creates a new broad exemption to disclosure which has no statutory or case support. I would affirm the trial court's order compelling discovery in *Hangartner v. City of Seattle* and reverse the trial court's order limiting discovery in *Citizens Against the Monorail v. Seattle Popular Monorail Authority* (ETC).[9]

The majority disregards the principles underlying the public disclosure act (PDA.) The PDA mandates broad public disclosure of public records upon request. *Newman v. King County*, 133 Wn.2d 565, 570, 947 P.2d 712 (1997). The purpose of the PDA is to ensure the sovereignty of the people and the accountability of the governmental agencies that serve them. RCW 42.17.251. The PDA is to be liberally construed to promote full access to public records, and its exemptions are to be narrowly construed. RCW 42.17.251. Courts must "take into account the policy of [the PDA] that free and open examination of public records is in the public interest, *even though such examination may cause inconvenience or embarrassment to public officials or others.*" RCW 42.17.340(3) (emphasis added).

---

[9] I refer hereafter to the Seattle Popular Monorail Authority as ETC.

A. Citizens Against the Monorail's PDA Records Request

The majority ignores the purpose and requirements of the PDA by dismissing Citizens Against the Monorail's (Citizens) PDA request as overbroad and holding that "a proper request under the PDA must identify with reasonable clarity those documents that are desired, and a party cannot satisfy this requirement by simply requesting *all* of an agency's documents." Majority at 448. No authority exists within the PDA or our cases to support this new requirement. The PDA provides that "agencies shall, upon *request for identifiable public records*, make them promptly available to any person." RCW 42.17.270 (emphasis added). If an agency finds the request unclear, it may ask for clarification. RCW 42.17.320. Therefore, the only relevant inquiry is whether the party seeking public documents made a clear request for "identifiable public records"—the request's breadth is irrelevant.

Citizens requested from ETC the opportunity "to inspect all books, records, documents of every kind . . . ." Citizens Clerk's Papers (CCP) at 15. This request succinctly asked for all of the public records in ETC's possession that were pertinent to the purpose for which they were sought. Citizens is a political action committee formed in opposition to the Seattle monorail. ETC is a public development authority charged with planning the Seattle monorail. Logically, Citizens would be interested in *all* public records from that agency, and the agency's bylaws state that the "public shall have the right at any reasonable time to inspect *all* books, records and documents of every kind . . . ." CCP at 58 (emphasis added). What better way to "identify" all of ETC's public documents than simply to request all of ETC's public documents? Further, the record shows that ETC clearly understood the request and acknowledged its breadth, but never asked for clarification pursuant to RCW 42.17.320. *See, e.g.,* CCP at 22 (letter from ETC's counsel to Citizens' counsel explaining that "ETC will produce documents requested by your client as

expeditiously as possible given the extensive request and our need to review documents to determine the application of various exemptions."). I fail to see the impropriety in Citizens' request.

The majority relies upon two Court of Appeals cases, *Bonamy v. City of Seattle*, 92 Wn. App. 403, 960 P.2d 447 (1998) and *Wood v. Lowe*, 102 Wn. App. 872, 10 P.3d 494 (2000), but neither case supports its new judicially-created requirement that a PDA request must be narrow. Both *Wood* and *Bonamy* dealt with "requests" or inquiries into getting information or personnel files, and both cases held that the "requests" did not constitute a request for public records under the PDA—not that the requests were too broad to satisfy the PDA requirements. *Bonamy*, 92 Wn. App. at 409; *Wood*, 102 Wn. App. at 876-77. Neither case supports the majority's new rule. No case, until now, has held that a valid request for identifiable public records was too broad, which is understandable because the PDA by its plain language does not require requests to be narrow.

The majority also concludes that allowing Citizens to request all public documents from ETC would lead to absurd results, but it fails to indicate what those absurd results would be. *See* majority at 448. Citizens made the only request possible under the circumstances. On September 26, 2002, after Citizens' initial records request, Citizens requested a records index from ETC to help facilitate its records request and identify specific documents sought. CCP at 15-16. ETC responded that it did not have a records index and that, pursuant to RCW 42.17.260(4), an index was not required because it would be unduly burdensome. CCP at 19. The majority does not explain how Citizens could have specifically identified documents that ETC did not even specifically identify. I fail to see the absurdity in Citizens' request.

## B. PDA Exemptions

Unfortunately, the damage caused to the core principles of the PDA by the majority does not end with its holding

requiring a party to specifically identify requested records that cannot be specifically identified. The majority further holds that the attorney-client privilege codified at RCW 5.60.060(2)(a) falls within the narrow exemptions to disclosure of public documents articulated at RCW 42.17.260(1). Like the former, the latter holding does not come close to conforming to the PDA's mandate for broad public disclosure.

In accordance with the PDA's mandate for broad public disclosure, information requested under the PDA must be disclosed unless a specific exemption is applicable. *Dawson v. Daly*, 120 Wn.2d 782, 789, 845 P.2d 995 (1993); RCW 42.17.260(1). The majority misconstrues the "other statute" exemption of RCW 42.17.260(1) by holding that it incorporates the attorney-client privilege. The majority can reach its conclusion only by reversing the mandate for broad disclosure and creating a broad exemption.

The foundation of the majority's approach is an assertion that a plain reading of RCW 42.17.260(1) can lead to no other conclusion but that the "other statute" language incorporates RCW 5.60.060(2)(a), which is an "other statute which exempts or prohibits disclosure of specific information or records." RCW 42.17.260(1). However, a plain reading of both statutes together leads to the opposite conclusion.

RCW 42.17.260(1) states, in pertinent part,

> Each *agency*, in accordance with published rules, *shall make available* for public inspection and copying all public records, *unless the record falls within the specific exemptions* of subsection (6) of this section, RCW 42.17.310, 42.17.315, *or other statute which exempts or prohibits disclosure of specific information or records*.

(Emphasis added.) The plain language directs the *agency* to disclose records unless a specific exemption applies, and an "other statute which exempts or prohibits disclosure" must be applicable to that agency to be incorporated into RCW 42.17.260(1).

The majority mistakenly incorporates the codified attorney-client privilege into the "other statute" exemption even though the attorney-client privilege statute is directed at the attorney, not the agency. The attorney-client privilege statute provides: "*An attorney or counselor shall not*, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment." RCW 5.60.060(2)(a) (emphasis added). While the attorney-client privilege prohibits attorneys from disclosing information, PDA requests are directed at agencies. By ignoring this key distinction, the majority opinion renders ineffectual the PDA's strong mandate to *agencies* that they must disclose public information.

The attorney-client privilege also fails to meet the requirements of the PDA because the attorney-client privilege is not an "other statute which *exempts or prohibits* disclosure. . . ." RCW 42.17.260(1) (emphasis added). The attorney-client privilege *conditions* disclosure upon consent of the client to disclose; it does not exempt or prohibit disclosure. A broad condition does not conform to the PDA's plain language that *requires* consent by the client to disclose except in narrow, specifically articulated exemptions.

Further, the attorney-client privilege fails the specificity requirement of the "other statute" exemption of the PDA. The "other statute" exemption incorporates into the PDA only another statute "which exempts or prohibits disclosure of *specific information or records*." RCW 42.17.260(1) (emphasis added). If another statute exempts *specific information or records* and meshes with the PDA, it operates to supplement the PDA. *Progressive Animal Welfare Soc'y v. Univ. of Wash. (PAWS)*, 125 Wn.2d 243, 261-62, 884 P.2d 592 (1994). However, in the event of a conflict between the PDA and another statute, the provisions of the PDA govern. RCW 42.17.920. As we pointed out in *PAWS*, "the Legislature takes the trouble to repeat three times that exemptions under the Public Records Act should be construed narrowly. RCW 42.17.010(11); RCW 42.17.251; RCW 42.17-

.920." *PAWS*, 125 Wn.2d at 260. The statute protecting trade secrets discussed in *PAWS* exemplifies the type of statute that exempts *specific* information without conflicting with the PDA's mandate to construe exemptions narrowly. *See PAWS*, 125 Wn.2d at 262. Here, the majority does not incorporate a narrow exemption of specific information or records into the PDA, but rather incorporates the extremely general attorney-client privilege which swallows the PDA's purpose of allowing citizens a right to public records. The holding is, to use a word from the majority opinion, absurd.

Finally, the majority's argument is inconsistent with the legislative history of the statutory exemptions that created the "other statute" exemption. The "other statute" language was added by the legislature in 1987. LAWS OF 1987, ch. 403. The legislature made this change in direct response to our case of *In re Rosier*, 105 Wn.2d 606, 717 P.2d 1353 (1986). LAWS OF 1987, ch. 403, § 1.

In *Rosier*, we read into the PDA a "general privacy" exemption to disclosure and allowed agencies to examine the context of a public records request in order to determine if the agency was required to comply with the request. The legislature specifically rejected this interpretation and amended the language of the PDA. The legislature stated that it "intend[ed] to restore the law relating to the release of public records largely to that which existed prior to the Washington Supreme Court decision in 'In Re Rosier,' 105 Wn.2d 606 (1986)." LAWS OF 1987, ch. 403, § 1 (Intent). This revision clarified that the purpose of the 1987 amendments was to restrict the exemptions of the act, not to expand them. Thus, the majority's position that the attorney-client privilege is fully incorporated into the PDA, is directly at odds with the stated purpose of the amendments.

In short, the majority's "plain reading" of RCW 42.17.260(1) is done in a vacuum that ignores related statutory context, although we have recently clarified that such an approach is inappropriate. Rather than determining whether an ambi-

guity exists by examining statutory language in isolation, courts must

> "consider legislative purposes or policies appearing on the face of the statute as part of the statute's context. In addition, background facts of which judicial notice can be taken are properly considered as part of the statute's context because presumably the legislature also was familiar with them when it passed the statute. Reference to a statute's context to determine its plain meaning also includes examining closely related statutes, because the legislators enact legislation in light of existing statutes."

*Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002) (quoting 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 48A:16, at 809-10 (6th ed. 2000)). By failing to consider the statutory context, the majority construes RCW 42.17.260(1) in a manner at odds with clear legislative intent and our recent precedent.

As the majority asserts, the language the legislature used is clear. Unfortunately, the majority misreads it. I would hold that the attorney-client privilege is not an exemption of specific information or records directed at a public agency. Accordingly, the "other statute" exemption of RCW 42.17.260(1) does not incorporate the attorney-client privilege. I dissent.

MADSEN, SANDERS, and CHAMBERS, JJ., concur with JOHNSON, J.

Reconsideration denied July 30, 2004.